**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **Luminati Networks Ltd.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Code200, UAB, Oxysales, UAB, and Metacluster LT, UAB,**<br><br>**Defendants.** | **Civil Action No. 2:19-cv-00396-JRG** |

**DEFENDANTS' REPLY IN SUPPORT
OF RULE 12(B)(6) MOTION TO DISMISS**

**SIEBMAN, FORREST,
BURG & SMITH LLP**

MICHAEL C. SMITH

**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**

STEVEN CALLAHAN
CRAIG TOLLIVER
GEORGE T. "JORDE" SCOTT

*Counsel for Defendants Code200, UAB, Oxysales, UAB, and Metacluster LT, UAB*

June 16, 2020

**TABLE OF CONTENTS**

I. Introduction ..... 1

II. Luminati's Arguments Confirm the Invalidity of its Claims Under § 101 ..... 1

A. Luminati's Response Focuses on the Selection of an IP Address from a Database, a Plainly Abstract Feature ..... 1

1. The Federal Circuit has Definitively Held that the Selection of Information from a Standard Database is Not Patentable ..... 2

2. Cases Cited by Luminati Confirm that the Asserted Claims are Abstract ..... 3

B. Luminati's Unsupported References to a "New Network" Are Untethered to the Claims and Must Fail ..... 4

1. The Federal Circuit Requires Analysis of the Claims, not Unsupported Attorney Argument or Unclaimed Details from the Patent Specification ..... 5

2. Luminati's Claims Concern General Purpose Computing Devices Exchanging Standard Internet Information ..... 6

III. Conclusion ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)....................4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)....................4

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................2, 3, 4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....................3

*CyberFone Systems, LLC v. CNN Interactive Group, Inc.*,
558 F. App'x 988 (Fed. Cir. 2014)....................3

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)....................3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014)....................4

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................4

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020)....................5, 6, 7, 8

*Freeny v. Fossil Group, Inc.*,
18-CV-00049, 2019 WL 1089145 (E.D. Tex. Feb. 12, 2019)....................4

*In re TLI Communications Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................3

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
850 F.3d 1315 (Fed. Cir. 2017)....................3

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017)....................4

## I. INTRODUCTION

In its Opposition (ECF No. 25), Luminati attempts to save its claims by referring throughout its brief to a server that stores a list of IP addresses in a database and then selects one or more IP addresses. The notion that a list of IP addresses in a database can somehow impart § 101 viability is simply false, and the Federal Circuit has repeatedly rejected the concept.

Luminati is left with no viable argument regarding § 101. Luminati cannot ignore the wealth of Supreme Court and Federal Circuit case law—cited in Defendants' Motion—holding that the sending and receipt of information among standard computer components is abstract and unpatentable. Yet those are the precise contours of Luminati's claims. Luminati does not claim to have invented proxies, intermediaries, client devices, servers, IP addresses, Internet communications, or lists of IP addresses in a database, but it has attempted to claim the sending and receiving of standard Internet information among standard components. The Court should accordingly invalidate Luminati's Asserted Claims under § 101.

## II. LUMINATI'S ARGUMENTS CONFIRM THE INVALIDITY OF ITS CLAIMS UNDER § 101

### A. Luminati's Response Focuses on the Selection of an IP Address from a Database, a Plainly Abstract Feature

In their Motion to Dismiss ("Motion" or "Mot." (ECF No. 15)), Defendants showed that the Asserted Claims are directed to the sending and receiving of standard Internet information among standard computer devices, with a computer device being used as an intermediary. Mot. at 5-11. Under Federal Circuit law, Luminati's claims are abstract and unpatentable. *Id.* at 5-11 (*Alice* Step 1), 11-15 (*Alice* Step 2).

In its Opposition, Luminati focuses—repeatedly—on the fact that its Asserted Claims recite the selecting of an IP address from a group of IP addresses. Luminati argues that Defendants "gloss over" the fact that the first server has "functionality" to "select and use an IP address from

a group of IP addresses" and that its patent involves "a new network involving a server that selects IP addresses for use in fetching content." Opp. at 1. Luminati repeatedly emphasizes that the "group of IP addresses" from which the first server selects are "stored on the first server database." *Id.* at 8.[1] This purported "improvement" cannot save the Asserted Claims from invalidation under *Alice*.

1. The Federal Circuit has definitively held that the selection of information from a standard database is not patentable

Luminati's argument borders on the absurd, and the fact that Luminati now seems to pin its hopes on the selection of IP addresses from a database speaks volumes about the patentability (or lack thereof) of Luminati's Asserted Claims. The Federal Circuit has held repeatedly and consistently that the storing and retrieving of information from a standard database fails § 101.

For example, in *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1283 (Fed. Cir. 2018), the patents at issue were directed to a "self-evolving generic index" for organizing information stored in a database. The patentee's claims in *BSG* contained multiple steps describing a particular manner of indexing and retrieving data from a database, and therefore included much more detail regarding a database than do Luminati's claims. *See id.* at 1284. Nevertheless, the Federal Circuit rejected the plaintiff's argument that the claims were directed to a non-abstract idea because they required a specific database structure, noting that the recitation of "a database structure slightly more detailed than a generic database" was not sufficient for § 101 purposes. *Id.* at 1287. The patentee pointed to the benefits of allowing users to quickly and efficiently access large numbers of records, while identifying those that are relevant, but such alleged benefits were irrelevant because they were not improvements to database functionality, but instead are

[1] *See also, e.g.*, *id.* at 7 ("select an IP address from the group and uses that IP address to fetch content"), 10-11 ("storing a database of a group of IP addresses, selecting an IP address from this group . . ."), 13 ("selects an IP address from the group and uses that selected IP address . . .").

"benefits that flow from performing an abstract idea in conjunction with a well-known database structure." *Id.* at 1288.

This holding is not unique to *BSG*. In *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315 (Fed. Cir. 2017), the Federal Circuit considered patents on the use of an index to locate information in a computer database, and the classification and storage of digital images. The court held that "creating an index and using that index to search for and retrieve data" is an abstract idea, as in other cases involving "similar abstract concepts that merely collect, classify, or otherwise filter data." *Id.* at 1327. In *In re TLI Communications Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016), the court concluded that the claims were "simply directed to the abstract idea of classifying and storing digital images in an organized manner." *See also CyberFone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 993 (Fed. Cir. 2014) (the particular configuration of the steps of "obtaining, separating, and then sending information" did not confer patentability, as the combination of steps added nothing to "the underlying idea of categorical information storage"); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1012 (Fed. Cir. 2018) ("[T]hese claims are directed to the abstract idea of collecting spreadsheet data, recognizing changes to spreadsheet data, and storing information about the changes."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (stating that "collecting data," "recognizing certain data within the collected data set," and "storing the recognized data in memory" are abstract ideas that are well-known).

In sum, Luminati cannot impart patentability to its claims by reciting a list of IP addresses or selection of IP addresses from that list.

2. <u>Cases cited by Luminati confirm that the Asserted Claims are abstract</u>

Case law cited by Luminati (Opp. at 14)—including *Enfish* and *Visual Memory*—confirms the abstract nature of Luminati's claims. In *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

1327, 1337 (Fed. Cir. 2016), the claims at issue included a new "self-referential table [that] functions differently than conventional database structures." Similarly, in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017), the court determined that the claims at issue were directed to an "improved memory system" that configured operational characteristics of a computer's cache memory based on the type of processor connected to the memory system. *BSG* summarized the two cases as follows: "Both *Enfish* and *Visual Memory* concerned claims that focused on improved ways in which systems store and access data." *BSG*, 899 F.3d at 1288.[2]

Luminati's patent claims, by contrast, do not come close to reciting a new or improved database structure, or a manner of storing and accessing data. Luminati, of course, does not claim—not could it claim—to have invented IP addresses, the storing of IP addresses on a computer device, or retrieving IP addresses. Luminati's claims are abstract and unpatentable for the reasons the Federal Circuit has stressed in *BSG* and the other cases discussed above.

### B. Luminati's Unsupported References to a "New Network" Are Untethered to the Claims and Must Fail

In addition to its unpersuasive IP address "database" argument, Luminati also insists that its Asserted Claims recite a "new network." For example, Luminati states, "Defendants repeated-

---

[2] *Amdocs*, cited by Luminati, concerned a "completing" limitation (in database claims) which meant "enhance a record until all required fields have been populated" and "entail[ed] an unconventional technological solution (enhancing data in a distributed fashion)." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300, 1303 (Fed. Cir. 2016). This stands in contrast to the usage of standard databases, computers and servers to exchange information in Luminati's claims. *DDR Holdings* concerned a system involving an "'outsource provider' having a web server which directs the visitor to an automatically-generated hybrid web page" with particular attributes, not the mere exchange of information among computers or use of a database. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). *Aatrix* concerned a data processing system, including certain form files and data files, and a form viewer program, not the sending or receiving of standard information among standard computers or using a database. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1123-24 (Fed. Cir. 2018). In *Freeny*, the claims were drawn to a physical device that "improves the prior art by incorporating multiple low power type signaling capability into a single unit," among other things, and were therefore far different in nature from Luminati's claims. *See Freeny v. Fossil Group, Inc.*, 18-CV-00049, 2019 WL 1089145, at *5 (E.D. Tex. Feb. 12, 2019).

ly ignore that the claims require specific components in particular roles operating in a manner that builds a new network that did not exist before, specifically a 'first client device,' 'first server,' and 'web server.'" Opp. at 10.

What exactly is the "new network"? Luminati does not claim to have invented a client device, a server, or a web server. Luminati never provides specifics, aside from its attempt (discussed above) to elevate a "database" of IP addresses to patentable subject matter. And Luminati's allegedly "new network" certainly is not reflected in the claims.

1. The Federal Circuit requires analysis of the claims, not unsupported attorney argument or unclaimed details from the patent specification

The case law is clear that the analysis under *Alice* (and related cases) must look to whether the **claimed invention** is patent eligible, not whether the specification contains additional relevant detail and not whether the patentee can characterize its claims in a certain way. *See, e.g.*, Mot. at 6-9, 11-12 (citing cases). The Federal Circuit underscored this point again in its April 14, 2020, decision in *Ericsson* which rejected the patentee's argument that an unclaimed, allegedly new network "architecture" rendered the claims patentable. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020). The *Ericsson* patentee argued that "the 'layered architecture' of the invention," including "three specific layers of software," provided "the necessary inventive concept" for its patent claims directed to controlling access to resources. *Id.* The court rejected this argument because the alleged "architecture" was "wholly missing" from the claims, which did not recite "the specific three layered architecture" or "software stacks or units." *Id*. It was not enough to point out detail from the specification, because "any reliance on the specification in the § 101 analysis must always yield to the claim language." *Id*. at 1328-29 (citing case law).

The Federal Circuit's insistence on looking to the claims for the § 101 inquiry stands in

stark contrast with Luminati's Opposition. Luminati repeatedly characterizes its inventions in grandiose terms, such as an "innovative, improved networking architecture that operates on top of the Internet," as a "new, dedicated network," or with similar linguistic variations. Opp. at 8. But Luminati never shows where, **in the claims**, the new architecture is allegedly found.

This is because none of these purported "innovations" were claimed. Instead, Luminati's asserted claims are written in functional language, reciting the sending or receiving of information over the Internet between a client device, server, or web server. The Federal Circuit has repeatedly found that the sending and receiving of information between standard equipment does not constitute a patent eligible invention. *See* Mot. at 6-7 (citing, among other decisions, *Reese*, *CyberFone* and *Electric Power Group*). And like the claims in *Ericsson*, which were invalidated under § 101, Luminati's patent recites functionality "in general terms, without limiting them to technical means for performing the functions that are arguably an advance." 955 F.3d at 1328 (also noting that the claims-at-issue "merely make generic functional recitations that requests are made and then granted"). Luminati's claims do not include any type of description of **how** the recited Internet information is exchanged between devices in any even arguably novel way.[3]

2. <u>Luminati's claims concern general purpose computing devices exchanging standard Internet information</u>

Luminati does not claim—nor could it claim—to have invented proxy devices, intermediaries, computer devices, servers, or Internet protocols. Yet its Asserted Claims are confined to standard computer devices exchanging standard Internet information or selecting an IP address

[3] Luminati's argument that, under Defendants' reasoning, "the Internet itself would have been considered not inventive" is unpersuasive. Opp. at 11. The *Alice* analysis applies to patent claims, not an object or system itself. One could undoubtedly claim aspects of the Internet in both abstract and non-abstract ways. But Luminati chose to claim the exchange of Internet information with computer intermediaries, and to do so in the most abstract, high level, and result-oriented way, rather than claiming any particular technical advancement. Luminati must now live with this choice.

from a database. There is nothing in the Asserted Claims raising an inventive concept that would meet *Alice* step two.

The ’511 patent, in fact, confirms that the various components—clients, peers, agents, communication devices—are all generic and used interchangeably. Figure 3 is telling. The patent specification states as follows with respect to Figure 3:

> The *network 100 of FIG. 3 contains multiple communication devices*. Due to functionality provided by software stored within each communication device, which may be the same in each communication device, *each communication device may serve as a client, peer, or agent*, depending upon requirements of the network 100, as is described in detail herein. It should be noted that *a detailed description of a communication device is provided with regard to the description of FIG. 4*.

’511 Pat. at 4:46-55 (emphases added). As noted in the above passage, the ’511 patent then provides a more detailed description of the “communication device” that “may serve as a client, agent, or peer”:

> FIG. 4 is a schematic diagram further illustrating a communication device 200 of the communication network 100, *which contains general components of a computer. As previously mentioned, it should be noted that the communication device 200 of FIG. 4 may serve as a client, agent, or peer.*

*Id.* at 5:54-59 (emphasis added). The patent specification goes on to state that “[t]he communication device 200 includes a processor 202, memory 210, at least one storage device 208, and one or more input and/or output (I/O) devices 240 (or peripherals) that are communicatively coupled via a local interface 250.” *Id.* at 5:61-64. The specification also confirms other standard, off-the-shelf features of the “communication device,” including that its memory may include “ROM, hard drive, tape, CDROM, etc.” and that its input/output devices may include “a keyboard, mouse, scanner, microphone, etc.” or a printer. *Id*. at 6:8-26, 6:63-67.

As the Court can see from the above descriptions, the patent does not describe—much less claim—a specialized "architecture" based on a new network. Instead, the patent makes crystal clear that "communication devices" may serve as the **client, peer, or agent**, and that communication devices are **typical computers** that contain "general components of a computer" and may include a keyboard, mouse, scanner, or printer. In other words, the patent concerns general-purpose computers. Further, in co-pending case 19-cv-395, which concerns two related patents (the '319 and '510 patents) that share a common specification with the '511 patent, Luminati confirmed that the standard, off-the-shelf communication device of Figure 3—which constitutes the "agent" and "client" of Figure 3, per the above discussion—maps to the "client device" and "server" elements of the claims. *See* ECF No. 28 (19-cv-395 case) at 15-16 (using green and red annotations).

It is therefore surprising that Luminati now argues that its "network components are not interchangeable, and the claimed methods involve steps that are not limited to the ordinary use of such components." Opp. at 7. As explained above, the claimed network components are entirely interchangeable—the patent *depends* on such interchangeability. The patent requires that the clients, peers, and agents be standard computers (which may even have keyboards and mouse input devices). Luminati's unsupported attorney argument about the allegedly new "architecture" of the '511 patent is thus not only incorrect, but also flatly contradicted by the specification. Further, the Asserted Claims recite that the general purpose "client device," "web server," and "first server" simply exchange information over the Internet using standard Internet communications. There is no other way to read the claims.

Finally, Luminati is unable to distinguish Defendants' example of the "middle school" children, which includes a human intermediary and a common human process relating to all

steps of Luminati's claims. Mot. at 10. Luminati professes confusion about Jane, Susan, and Emily (Opp. at 12), but, as explained in the Motion, Mike knows three potential intermediaries (Jane, Susan, and Emily), and chooses Susan as the intermediary. *Id.* There is no difference, from a § 101/*Alice* perspective, of a computer with a list of IP addresses and a person with a list of names, such as Mike's list with the names of Jane, Susan, and Emily. Setting aside Luminati's professed confusion, Luminati provides no legitimate way to distinguish Defendants' "middle school" example—an example that shows a basic human interaction that is perfectly commensurate with Claim 1.

## III. CONCLUSION

For these reasons, and those explained in Defendants' Motion, the Court should dismiss Luminati's Complaint with prejudice.

Dated: June 16, 2020

Respectfully submitted,

MICHAEL C. SMITH
Texas State Bar No. 18650410
michaelsmith@siebman.com
**SIEBMAN, FORREST, BURG & SMITH LLP**
113 East Austin Street
Marshall, Texas 75671
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
Texas State Bar No. 24053122
scallahan@ccrglaw.com
CRAIG TOLLIVER
Texas State Bar No. 24028049
ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
Texas State Bar No. 24061276
jscott@ccrglaw.com
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Defendants Code200, UAB, Oxysales, UAB, and Metacluster LT, UAB*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on June 16, 2020. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

STEVEN CALLAHAN