IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD., §<br>§<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§ CIVIL ACTION NO. 2:19-CV-00396-JRG<br>CODE200, UAB, METACLUSTER LT, §<br>UAB, OXYSALES, UAB, §<br>§<br>§<br>*Defendants*. §<br>§ | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the Rule 12(b)(6) Motion to Dismiss (the "Motion") filed by Defendants Code200, UAB; Oxysales, UAB; Metacluster LT, UAB (collectively, "Defendants"). (Dkt. No. 37.) Having considered the Motion, the related briefing, and the relevant authority, the Court is of the opinion that it should be **DENIED**.

Also before the Court are Defendants Oxysales, UAB and Metacluster LT, UAB's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 15) and Code200, UAB's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 27), which are **DENIED AS MOOT** in light of the Amended Complaint (Dkt. No. 26).

### I. BACKGROUND

Plaintiff Luminati Networks Ltd. ("Luminati") filed its complaint against Defendants on December 6, 2019, asserting that Defendants' data center proxy services (including Oxylabs Data Center Proxy Service and Real-Time Crawler when it uses the Oxylabs Data Center Proxy Service) infringe Luminati's U.S. Patent No. 10,484,511 (the "'511 Patent"). (Dkt. No. 1.) On June 9, 2020, Luminati added allegations of infringement of U.S. Patent No. 10,637,968 (the "'968 Patent"). (Dkt. No. 26.)

Defendants now file the instant Motion arguing that the claims of the '511 Patent and the '968 Patent are invalid under 35 U.S.C. § 101 and that, accordingly, Luminati has failed to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

### A. Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101.  Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent ineligible subject matter and those that "integrate the building blocks into something more." *Id*.

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id*. at 2355.  In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original).  In other words, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc.*, 725 Fed. App'x. 959, 965 (Fed. Cir. 2018). There are many obscure references that may qualify as prior art but are insufficient to establish that something rises to the level of "well-understood, routine, and conventional activit[ies] previously engaged in by scientists who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However,

3

"[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Berkheimer*, 881 F.3d at 1368.

### B. Federal Rule of Civil Procedure 12(b)(6)

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

There are two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to

dismiss. *Id.* at 678–79. This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but is has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   ANALYSIS

Defendants claim that Luminati's patent infringement claims should be dismissed under Rule 12(b)(6) because the Asserted Patents are directed to patent-ineligible subject matter, and as such, Luminati has failed to state a claim. (Dkt. No. 37.) Luminati responds that the Asserted Patents are patent-eligible. (Dkt. No. 41.)

Defendants argue that the asserted '511 and '968 Patents each fail both steps of the *Alice* analysis. (Dkt. No. 37.) Specifically, Defendants assert that the alleged invention of both patents is "simply the concept of using an intermediary to obtain information, so that the user seeking the information need not disclose the user's identity to the target which possesses the information." (Dkt. No. 37 at 1.) Under Step One of the *Alice* analysis, Defendants argue that the patents are directed to nothing more than receiving, requesting, sending, and identifying information. (Dkt. No. 37 at 7–14.) Defendants contend that this covers the "entirety of the claims." (*Id.* at 9.) Under *Alice* Step Two, Defendants argue the components recited in the claims are merely off the shelf (*Id.* at 14); use standard Internet protocols (*Id.* at 15, 16), and that the specification of the patents itself stated the computer used may have general components. (*Id.* at 16.)

Luminati argues that the claims of the '511 and '968 Patents are not directed to abstract ideas, but are rather directed to a novel client—server—web server architecture that involves non-conventional and non-routine functionalities of the comprising parts. (Dkt. No. 41.) Specifically, Luminati argues that (1) Defendants' argument is overly simplistic (Dkt. No. 41 at 1, 13–14),

including because Defendants do not provide a model for the '968 Patent (*Id.* at 14), leave out steps of the asserted claims (*Id.* at 15), and cite cases from asserted claims that worked on traditional, conventional network architectures (*Id.* at 6–17); (2) the asserted claims are not abstract because they claim an innovative network system for fetching content using an IP address selected from a group of IP addresses, which solves a problem in the art and is more than a generic way to send or receive information (Dkt. No. 4 at 10); (3) the asserted claims are directed to clients, proxies, and servers that have particular functionalities that were not conventional at the priority date of the patent (Dkt. No. 41 at 7).

### A. Claim Construction

Defendants contend no claim construction is needed to determine the § 101 motion (Dkt. No. 37 at 3), while Luminati maintains that claim construction is needed (Dkt. No. 41 at 8). A *Markman* hearing was held on January 29, 2021 before Magistrate Judge Payne, and a Claim Construction Order issued on February 8, 2021. (Dkt. No. 97.)  Subject matter eligibility may be determined without claim construction. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016). Nevertheless, the Court has reviewed the constructions therein and finds they do not alter the analysis set forth below. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) (encouraging the district court to address the parties' claim construction disputes before determining patent eligibility).

### B. Representative Claims

The parties use as a representative claim[1] the only independent claim of the '511 Patent, claim 1, which recites:

---

[1] There is no objection as to representativeness.

> 1. A method for fetching, by a first client device, a first content identified by a first content identifier and stored in a web server, for use with a first server that stores a group of IP addresses, the method by the first server comprising:
>
>> receiving, from the first client device, the first content identifier;
>>
>> selecting, in response to the receiving of the first content identifier from the first client device, an IP address from the group;
>>
>> sending, in response to the selecting, the first content identifier to the web server using the selected IP address;
>>
>> receiving, in response to the sending, the first content from the web server; and
>>
>> sending the received first content to the first client device,
>>
>> wherein the first content comprises a web-page, an audio, or a video content, and wherein the first content identifier comprises a Uniform Resource Locator (URL).

(U.S. Patent No. 10,484,511 (Dkt. No. 26-1) at Claim 1.)

> The parties also look to claim 1, again the sole independent claim, of the '968 Patent:
>
> A method for use with a requesting client device that comprises an Hypertext Transfer Protocol (HTTP) or Hypertext Transfer Protocol Secure (HTTPS) client, for use with a first web server that is a HTTP or HTTPS server that respectively responds to HTTP or HTTPS requests and stores a first content identified by a first content identifier, for use with a second server distinct from the first web server and identified in the Internet by a second IP address, and for use with a list of IP addresses, the method comprising:
>
>> identifying, by the requesting client device, an HTTP or HTTPS request for the first content;
>>
>> selecting, by the requesting client device, an IP address from the list;
>>
>> sending, by the requesting client device, to the second server using the second IP address over the Internet in response to the identifying and the selecting, the first content identifier and the selected IP address; and
>>
>> receiving, by the requesting client device, over the Internet in response to the sending, from the second server using the selected IP address, the first content.

(U.S. Patent No. 10,637,968 (Dkt. No. 26-2) at Claim 1.)

### C.  **Step One of** *Alice* **Analysis**

In the first step of the patent eligibility analysis laid out by the Supreme Court in *Alice*, the

7

court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Alice,* 573 U.S. at 218. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *See id.* at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification," and asks "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). In Step One, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (omission in original).

Looking at the claims of the '511 and '968 Patents, the Court notes that they are directed to an architecture comprised of a clients, servers, and web servers configured into an architecture to facilitate providing requested content using an IP address that is selected from a group of IP addresses and used to fetch the content. *See* Dkt. No. 26-1 at Claim 1, Dkt. No. 26-2 at Claim 1. The '511 Patent does this at a first server, which the '968 Patent does it at the client device. *See* Dkt. No. 26-1 at Claim 1, Dkt. No. 26-2 at Claim 1; Dkt. No. 41 at 10.

In *Alice* Step One, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs*, 841 F.3d at 1299 (quoting *3 Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

The patent specification can be considered on a motion to dismiss. *See Aatrix*, 882 F.3d at 1129. Considering the specification, the Asserted Patents embody technology-based solutions that improve the performance of networks. Dkt. No. 26-1[2] at 1:26–28 ("The present invention is related to Internet communication, and more particularly, to *improving data communication speed and bandwidth efficiency on the internet*" (emphasis added).) The claimed system is "designed for increasing network communication speed for users, while lowering network congestion for content owners and ISPs." *Id.* at Abstract.  The invention as claimed intends to provide these benefits across an internet that it increasingly congested, and increasingly busy. (*Id.* at "Background of the Invention."). These benefits are grounded in the technology at issue; namely, internet communications. *See id.* at Abstract; 1:26–28; Claim 1.

In the present Motion, Defendants have not met their burden to show that the asserted claims of the '511 and '968 Patents are directed to an abstract idea in *Alice* Step One. The Federal Circuit has often stated that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337 (citing *Alice*, 573 U.S. at 215). While the Court acknowledges that the Federal Circuit has determined other claims directed to the requesting, sending, and identifying of information are abstract, this does not mean that the present claims are abstract simply because they involve steps of requesting, sending, and identifying information. *Id*. at 1335 ("The 'directed to' inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world. Rather, the 'directed to' inquiry applies a stage-one filter to claims,

---

[2] Citations to the specifications of the Asserted Patents will reference only Dkt. No. 26-1, as the patents share a specification.

considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'")

Defendants present the Court with a proposed abstract idea framework that, in the initial stage-one filter, boils the asserted claims down to nothing more than the actions of "requesting," "sending," and "identifying." Defendants even fail to point out that these actions are constrained to internet communications. *See generally* Dkt. No. 26-1; *id.* at Claim 1 (performing steps "over the Internet"). Furthermore, Defendants' middle school analogy of Bill asking Alice to see if Susan will go to the school dance with him wholly fails to encompass the asserted claims—including by failing to account for particular steps in the claims (no analogue presented for, e.g., the "selecting, by the requesting client device, an IP address from the list" step of Claim 1 of the '511 Patent), as well as failing to present an analogue for the claims of the '968 Patent at all.

For these reasons, the Court concludes that Defendants have failed to meet their burden to establish that the asserted claims are directed to an abstract idea. Consequently, the asserted patents' eligibility remains intact and further analysis addressing Step Two of the *Alice* test becomes unnecessary.

## IV. CONCLUSION

For the reasons described herein, the Court **DENIES** the Rule 12(b)(6) Motion to Dismiss (Dkt. No. 37) filed by Defendants Code200, UAB; Oxysales, UAB; Metacluster LT, UAB.

**So ORDERED and SIGNED this 9th day of February, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE